THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MELVIN G. COLCLASURE, Defendant-Appellant.

Fourth District   No. 4—92—0900

Opinion filed September 9, 1993.

STEIGMANN, P.J., specially concurring.

Daniel D. Yuhas and Gloria Ann Morris, both of State Appellate Defender's Office, of Springfield, for appellant.

Gale C. Coil, State's Attorney, of Sullivan (Norbert J. Goetten, Robert J. Biderman, and Timothy J. Londrigan, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GREEN delivered the opinion of the court:

On August 5, 1992, following a jury trial in the circuit court of Moultrie County, defendant Melvin G. Colclasure was convicted of driving under the influence of alcohol (DUI) (Ill. Rev. Stat. 1991, ch. 95½, par. 11–501(a)(2)). He was subsequently sentenced to a term of 12 months' probation with conditions, including that: (1) he could not consume or possess any alcoholic beverages or illegal drugs during the term of his probation; (2) he could not enter any establishment whose primary purpose is the sale or distribution of alcohol; and (3) he was "not to remain resident in any residence where there is located alcoholic beverages."

Defendant appeals only the imposition of the condition that he may not remain resident in any residence where there are alcoholic beverages. We affirm.

The evidence presented at trial indicated defendant was arrested for DUI based upon a deputy sheriff's observation of defendant's driving, the odor of alcohol on his breath, his inability to complete field sobriety tests, and a blood-alcohol level of .11.

A sentencing hearing was held on October 5, 1992. The only evidence presented was a drug evaluation report suggesting defendant had a "Level 2, Problematic Use (Significant Risk)." (See 92 Ill. Adm. Code §1001.410 (1992).) No evidence was presented in aggravation or mitigation.

On appeal, defendant challenges the special condition that he could not reside in a residence where any alcoholic beverages are located as improper, as having no relationship to the offense or to his rehabilitation.

Defendant recognizes that it is not uncommon for a court to order, as a condition of probation, that a defendant refrain from using alcoholic beverages or frequenting taverns. (*People v. Brown* (1971), 133 Ill. App. 2d 861, 864, 272 N.E.2d 252, 254.) In *People v. Whittington* (1980), 87 Ill. App. 3d 504, 409 N.E.2d 150, the court imposed, as a condition of probation, the requirement that the defendant "neither smoke, ingest nor otherwise use alcoholic beverages, forbidden drugs or marijuana." (*Whittington*, 87 Ill. App. 3d at 505, 409 N.E.2d at 151.) That defendant was convicted of the offense of unlawful possession of a controlled substance. The appellate court said the condition was reasonably related to the underlying offense and to the defendant's rehabilitation.

Defendant agrees such a condition of probation was relevant in *Whittington*. He claims here, however, the possession of alcoholic bev-

erages or possible drinking by third persons should not determine whether he has complied with the conditions of probation.

Defendant claims he is indigent. He further claims that although he was living on his own at the time of sentencing, he obtained money for food by doing work for his mother and brother, and prior to his arrest, he had been living with his brother for about three weeks. Defendant argues that it would not be unlikely that at some point during the course of the year he is on probation that he would have to live with someone else because he could no longer afford to live by himself. Defendant maintains that if he again is living with his brother, and his sister-in-law brought home a bottle of champagne with which to celebrate the Fourth of July, he would be placed in the position of violating his probation or becoming homeless.

Section 5—6—3.1(c)(15) of the Unified Code of Corrections (Code) (Ill. Rev. Stat. 1991, ch. 38, par. 1005—6—3.1(c)(15)) provides that a court may require, as a condition of probation, that a defendant refrain from having any contact with certain specified persons or particular types of persons.

In addition, as in *Whittington*, similar conditions have been upheld. This case is unlike *Brown*, cited by defendant, where the defendant, who was employed as a bartender and tavern operator, was ordered as a condition of probation for aggravated battery to refrain from owning, operating, or working in a tavern. The appellate court found the condition to be an abuse of discretion, because there was no direct connection between the defendant's employment and the crime charged.

This case is also unlike *People v. Johnson* (1988), 174 Ill. App. 3d 812, 815, 528 N.E.2d 1360, 1362, where the trial court was found to have abused its discretion in imposing a condition of supervision which required the DUI defendant to place an advertisement in a newspaper with her picture and an apology for her conduct. The court determined the condition had no relationship to the defendant's rehabilitation and was designed to publicly humiliate the defendant.

Here, the condition imposed is directly related to the offense and defendant's rehabilitation. The condition was not meant to embarrass or punish the defendant. The record indicated that defendant had a prior arrest for DUI, and his alcohol and drug evaluation indicated he has a serious problem concerning the use of alcohol. In addition, defendant denied that he had anything to drink on the night of the offense.

The court's order that he refrain from residing in a residence where alcohol is located relates to defendant's alcohol abuse and is designed to help defendant abstain from the use of alcohol.

Accordingly, for the reasons stated, the order of the trial court is affirmed.

Affirmed.

KNECHT, J., concurs.

PRESIDING JUSTICE STEIGMANN, specially concurring:

Although I fully agree with the result the majority reaches, I disagree with the majority opinion's distinguishing this case from the holding of this court in *Johnson* (174 Ill. App. 3d 812, 528 N.E.2d 1360). I believe that *Johnson* was wrongly decided and that this court should so state, eliminating any need to distinguish it.

In *Johnson*, defendant pleaded guilty to DUI and asked to be sentenced to supervision under section 5—6—1(c) of the Code (Ill. Rev. Stat. 1987, ch. 38, par. 1005—6—1(c)). The trial court informed defendant that before it would grant her request, she would have to place an advertisement in a local newspaper showing her picture when booked for the DUI, together with an apology for her conduct.

This court held that the trial court's conditioning supervision on the publication of the picture and the apology in the local newspaper was improper and wrote the following:

"The defendant in this case is a young lady with a history of being a good student, having no prior criminal record, and has been evaluated as not having an alcohol or drug problem. No accident or injury to others was involved in the charge now before the court.

We recognize that the trial judge may be attempting to put more bite, or punishment, in the supervision process. However, the effect of the publication appears to go beyond the intent of the statute and, possibly, adds public ridicule as a condition. Neither the trial court nor this court, without professional assistance, can determine the psychological or psychiatric effect of the publication. An adverse effect upon the defendant would certainly be inconsistent with rehabilitation and with the statutory provision allowing the court to require psychological or psychiatric treatment." (*Johnson*, 174 Ill. App. 3d at 815, 528 N.E.2d at 1362.)

In my judgment, the above holding is egregiously, outrageously wrong, and this court should take advantage of the opportunity the present case provides us to overrule *Johnson.*

Assuming that public ridicule may have been a goal of the trial court's action *Johnson,* what is wrong with that, especially when compared to the trial court's authority to sentence the same defendant to as much as 364 days in jail? The language this court used in *Johnson* suggests that had the trial court imposed a jail sentence, that would have been just fine, as long as the trial court did not offend the defendant's sensibilities when doing so.

In an effort to battle the carnage on our highways caused by drunk drivers, the courts of this State should utilize all reasonable sentencing options, and courts of review ought not priggishly stand over their shoulders, sniffing in disdain that the trial courts' efforts somehow offend *our* sensibilities. As opposed to my colleagues, I applaud the trial court's efforts in *Johnson* to utilize the old-fashioned concept of shame as a deterrent to others who might drive drunk. Just maybe they might think twice before committing that serious crime.

In support of my approval of the trial court's action in *Johnson,* I note that the introductory language in section 5—6—3.1(c) of the Code that applied at the time of the sentencing in *Johnson* described the trial court's authority to impose conditions of supervision as follows:

> "The court may *in addition to other reasonable conditions relating to the nature of the offense or the rehabilitation of the defendant as determined for each defendant in the proper discretion of the court* require that the [defendant comply with the conditions that follow]." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 38, par. 1005—6—3.1(c).)

Not only is this introductory language still present and unchanged in that section of the Code (see 730 ILCS 5/5—6—3.1(c) (West 1992)), but it also appears unchanged as the language introducing *probationary* conditions (see 730 ILCS 5/5—6—3(b) (West 1992)). Significantly, the Code currently provides, as it did in 1987, that a factor a trial court could properly consider in imposing sentence was whether "the sentence is necessary *to deter others* from committing the same crime." (Emphasis added.) (730 ILCS 5/5—5—3.2(a)(7) (West 1992); Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3.2(a)(7).) Clearly the trial court's use of the newspaper ad in *Johnson* as a prerequisite for supervision was intended—and effectively so—to deter others from committing the dangerous crime of DUI. This court's decision in *Johnson* improperly eliminated that effective weapon from the trial court's arsenal.

Even more regrettable is the language in *Johnson* about how the defendant was "a young lady with a history of being a good student, having no prior criminal record, and has been evaluated as not having an alcohol or drug problem. No accident or injury to others was involved in the charge now before the court." (*Johnson*, 174 Ill. App. 3d at 815, 528 N.E.2d at 1362.) If this court really understood the dangers underlying the crime of DUI, it would realize that whether a particular drunk driver kills or maims some other citizen is *entirely* fortuitous. Although this offense is called drunk driving, it should more accurately be called random assault with a deadly weapon upon every citizen of a given community who happens to be upon the highways (or even the sidewalks) at the time when the defendant is driving drunk.

The recklessness and the danger inherent in drunk driving makes that crime akin to one in which a person loads and cocks a .38 caliber revolver and then plays catch with it, throwing it high in the air. Imagine if the defendant in *Johnson* had done so and the gun dropped and discharged, but no one was shot despite the fact that several people were in the room at the time. In this hypothetical, would this court likewise have written, "No \*\*\* injury to others was involved in the charge now before the court"?

I further point out that in almost every case, sentencing courts evaluate "without professional assistance" how the various conditions of probation they impose upon convicted defendants will affect those defendants, whether those conditions require paying restitution, performing public service work, supporting dependents, *et cetera*. Yet, to my knowledge, other than in *Johnson*, no court of review has ever suggested that a trial court's doing so could somehow be improper in the absence of "professional assistance" (whatever that is).

Last, even *if* an adverse effect upon a defendant might arise from the trial court's imposing any of the above probationary conditions (or other conditions I did not mention), so what? The *worst* that could be said of such a sentence is that other judges might disagree that it should have been imposed. *Nothing* about an "adverse effect upon the defendant" would be "inconsistent with rehabilitation and with the statutory provision allowing the court to require psychological or psychiatric treatment." *Johnson*, 174 Ill. App. 3d at 815, 528 N.E.2d at 1362.

*Johnson* is wrong. We should say so now and overrule it.