# Illinois Official Reports

## Appellate Court

*People v. Morger*, 2018 IL App (4th) 170285

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CONRAD ALLEN MORGER, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-17-0285 |
| Filed | April 25, 2018 |
| Decision Under Review | Appeal from the Circuit Court of McLean County, No. 12-CF-1330; the Hon. Scott D. Drazewski, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Jacqueline L. Bullard, and Daaron V. Kimmel, of State Appellate Defender's Office, of Springfield, for appellant.<br><br>Jason Chambers, State's Attorney, of Bloomington (Patrick Delfino, David J. Robinson, and John M. Zimmerman, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE STEIGMANN delivered the judgment of the court, with opinion.<br>Justices DeArmond and Turner concurred in the judgment and opinion. |

**OPINION**

¶ 1        After defendant, Conrad Allen Morger, was convicted in 2014 of criminal sexual abuse and aggravated criminal sexual abuse, he challenged on appeal various conditions of his probation. This court vacated defendant's sentence and remanded for a new sentencing hearing. The trial court again sentenced defendant to probation, and he now appeals, challenging certain conditions of probation as (1) an improper increase in his sentence and (2) unconstitutional because they are overly broad and unreasonable. For the reasons that follow, we affirm the trial court's judgment.

¶ 2                                    I. BACKGROUND

¶ 3        In January 2013, the State charged defendant with aggravated criminal sexual abuse (720 ILCS 5/11-1.60(d) (West 2010)) and criminal sexual abuse (*id.* § 11-1.50(a)(1)). *People v. Morger*, 2016 IL App (4th) 140321, ¶ 5, 59 N.E.3d 219. Each charge alleged that defendant's criminal acts, which were committed against his sister, K.M., who was born September 22, 1997, occurred between August 1, 2010, and November 30, 2012. *Morger*, 2016 IL App (4th) 140321, ¶ 5.

¶ 4        In February 2014, following a bench trial, defendant was convicted of both counts. *Id.* ¶ 1. In April 2014, the trial court sentenced him to 180 days in jail and probation for 48 months. *Id.* ¶¶ 1, 21.

¶ 5        In defendant's initial appeal, he argued that the State failed to prove him guilty beyond a reasonable doubt of either charge. *Id.* ¶ 2. Defendant also argued his probation conditions were unreasonable, overly broad, and unrelated to his conviction or rehabilitation. In addition, defendant argued that the trial court erred by delegating its judicial discretion to the McLean County court services department to determine his sentence. *Id.* In August 2016, this court agreed with only defendant's last argument, so we affirmed defendant's convictions, vacated his sentence, and remanded for the trial court to use its discretion to determine his sentence. *Id.* ¶ 61.

¶ 6        On remand, the trial court resentenced defendant to the same term of probation and imposed various probation conditions. Defendant challenged some of those conditions in a motion to reconsider sentence, but the court denied that motion.

¶ 7        This appeal followed.

¶ 8                                    II. ANALYSIS

¶ 9        On appeal, defendant raises two contentions. First, he argues that the trial court's imposition of probation conditions on remand amounts to an improper increase of his sentence. Second, defendant argues probation condition Nos. 4, 5, 6, 8, 11, and 14 should be vacated because they are unconstitutional, overly broad, and unreasonable. We will address these arguments in turn.

¶ 10                     A. The Probation Conditions Imposed on Remand

¶ 11        Defendant argues that the probation conditions purportedly imposed by the McLean County court services department previously cannot be imposed by the trial court on remand

because doing so would impermissibly increase his sentence. Accordingly, defendant asks this court to vacate all of the probation conditions the trial court imposed on remand.

¶ 12 The State responds that (1) the trial court retained authority and discretion during defendant's probationary period to revoke or modify defendant's probation and (2) the court properly imposed probation conditions on remand. We agree with the State that the trial court's imposition of probation conditions on remand was proper.

¶ 13 In support of defendant's claim that the trial court's imposition of probation conditions on remand amounted to an impermissible increase in his sentence, he relies upon *People v. Castleberry*, 2015 IL 116916, ¶¶ 20-26, 43 N.E.3d 932, and *People v. Daily*, 2016 IL App (4th) 150588, ¶ 30, 74 N.E.3d 15. We reject defendant's *Castleberry* and *Daily* analysis because those cases are inapposite to defendant's situation.

¶ 14 In *Daily*, the circuit clerk purportedly imposed fines upon the defendant that the trial court never imposed. *Daily*, 2016 IL App (4th) 150588, ¶ 30. This court vacated the fines but declined the State's request that we remand so that the trial court could impose the mandatory fines. *Id.* In so concluding, we stated our agreement with the Third District's decision in *People v. Wade*, 2016 IL App (3d) 150417, ¶ 13, 64 N.E.3d 703, that such a remand would result in an impermissible increase in defendant's sentence on appeal, which would violate the supreme court's decision in *Castleberry*. *Id.* As the *Wade* court noted, the supreme court in *Castleberry* held that the appellate court may not increase a sentence on appeal, even one that is illegally low. *Id.*

¶ 15 Defendant's situation in the present case is different because, here, the *trial court* sentenced defendant to probation but then delegated the imposition of specific probation conditions to the McLean County court services department. *Morger*, 2016 IL App (4th) 140321, ¶¶ 1, 57. We held in the first appeal of this case that the trial court's delegation to the court services department was erroneous. *Id.* ¶ 54. "Because the imposition of probationary conditions is part of sentencing, the trial court must impose any such conditions at the sentencing hearing and may not delegate that authority to any third party, including the court services department." *Id.* ¶ 57. We then remanded the defendant's case for the trial court to judicially impose the specific probation conditions. *Id.* ¶ 58.

¶ 16 On remand, the trial court did just that—namely, the court resentenced defendant and imposed probation conditions. Thus, this case differs from *Daily* because, here, it was the *trial court* that initially imposed the erroneous sentence, not the circuit clerk. Thus, our remand directed the trial court to sentence defendant again without engaging in any improper delegation to the court services department to determine probation conditions. The trial court complied with our remand, and we see no error in the court's doing so. Because the trial court resentenced defendant and imposed probation conditions, the trial court exercised its judicial function and these conditions were properly imposed on remand.

¶ 17 B. Defendant's Challenge to Specific Probation Conditions

¶ 18 Next, defendant argues that probation condition Nos. 4, 5, 6, 8, 11, and 14 imposed by the trial court should be vacated because they are unconstitutional, overly broad, and unreasonable. These contentions on appeal appear based on two separate claims: (1) the probation conditions are inappropriate, excessive, and unreasonable as a matter of Illinois law, and (2) even if they might be permitted under Illinois law, they violate defendant's constitutional rights. Consistent with directions from the Illinois Supreme Court regarding

how lower courts should handle cases in which both constitutional and nonconstitutional claims are raised, we will first address defendant's nonconstitutional claims. See *People v. Chairez*, 2018 IL 121417, ¶ 13 (courts should "decide constitutional questions only to the extent required by the issues in the case" (internal quotation marks omitted)); see also *In re Dustyn W.*, 2017 IL App (4th) 170103, ¶ 24, 81 N.E.3d 88 ("Only if we conclude that the trial court did not abuse its discretion by imposing the probationary condition at issue should we then consider whether this condition violated respondent's constitutional rights."). Nonetheless, our consideration of a defendant's contention that a probation condition violated his constitutional rights can help inform this court's analysis regarding the overall reasonableness of that condition.

¶ 19                    1. *Defendant's Claim That the Probation Conditions Imposed*
                           *on Him Were Not Permitted Under Illinois Law*

¶ 20    In analyzing the probation conditions, we need to "first determine whether the court's discretion was exercised in a reasonable manner." *Dustyn W.*, 2017 IL App (4th) 170103, ¶ 24. "To be reasonable, a condition of probation must not be overly broad when viewed in the light of the desired goal or the means to that end." *In re J.W.*, 204 Ill. 2d 50, 78, 787 N.E.2d 747, 764 (2003).

¶ 21    Trial courts have broad discretion to impose probationary conditions to achieve the goals of fostering rehabilitation and protecting the public. *Dustyn W.*, 2017 IL App (4th) 170103, ¶ 24. "[T]he trial court's discretion is limited by constitutional safeguards and must be exercised in a reasonable manner." *Id.*

¶ 22    For the reasons that follow, we conclude that probation condition Nos. 4, 5, 6, 8, 11, and 14 are reasonable.

¶ 23                            a. Probation Condition No. 4

¶ 24    Probation condition No. 4 requires that defendant

> "[n]ot reside at the same address, in the same condominium unit or complex, or in the same apartment unit or complex, with another person defendant knows or reasonably should know is a convicted sex offender. (730 ILCS 5/5-6-3(a)(8.6)) This includes any mobile home park in which the homes are addressed by lot number, with or without a designated street address."

¶ 25    Defendant argues that probation condition No. 4 prohibits him "from living in any mobile home parks that use lot numbers if another convicted sex offender lives there." He further argues that probation condition No. 4 is overly broad and unreasonable "because mobile home parks are substantially different than apartment and condominium complexes in that they consist of entirely separate physical dwellings, just like subdivisions of houses." Defendant cites *People v. Meyer*, 176 Ill. 2d 372, 680 N.E.2d 315 (1997), to argue that a probation condition can veer so far in the direction of protecting the public that it unreasonably hampers the goal of rehabilitation, which he contends probation condition No. 4 does by arbitrarily limiting his access to some mobile homes, but not small houses. We disagree with all of these contentions.

¶ 26    Probation condition No. 4 does not prohibit defendant "from living in any mobile home parks that use lot numbers if another convicted sex offender lives there." Instead, that

condition prohibits defendant from residing at "any mobile home park in which the homes are addressed by lot number, with or without a designated street address" where defendant knows or reasonably should know another convicted sex offender resides. Thus, probation condition No. 4 restricts defendant's housing choices *only* if defendant knows, or should reasonably know, that a sex offender resides within the mobile home park, condominium, apartment unit, or complex.

¶ 27 Defendant misinterprets and misapplies *Meyer*, in which the Illinois Supreme Court had before it a probation condition requiring the defendant to erect a sign reading "Warning! A Violent Felon lives here. Enter at your own Risk!" The supreme court deemed this condition unreasonable because it contained a strong element of public humiliation or ridicule. *Id.* at 382. The court also struck down this probation condition because the sign was likely to have an adverse effect on innocent individuals who might have resided with, or intended to visit, the defendant, explaining that "[c]onditions which label a defendant's person or property have a stigmatizing effect and are considered shaming penalties." *Id.* at 383. The court added that "[a]lthough a probationer may experience a certain degree of shame from a statutorily identified condition of probation, shame is not the primary purpose of the enumerated conditions." *Id.*

¶ 28 *Meyer* is inapposite from this case. Probation condition No. 4 does not shame or publicly ridicule defendant, nor does it require defendant to erect a sign, display, or formally and publicly announce that he is a sex offender. Additionally, probation condition No. 4 will not cause an adverse effect on others who may happen to reside with or intend to visit defendant, nor does it label defendant's person or property.

¶ 29 In *People v. Johnson*, 174 Ill. App. 3d 812, 813, 528 N.E.2d 1360, 1360 (1988), the trial court ordered the defendant to place an advertisement in the local daily newspaper, which contained her booking picture and an apology for driving under the influence of alcohol. This court struck down that probation condition and cautioned against allowing trial courts to impose unconventional conditions, which may have unknown consequences. *Id.* at 815.

¶ 30 Nothing is unconventional about probation condition No. 4. The Illinois legislature authorized a geographic limitation in section 5-6-3(a)(8.6) of the Unified Code of Corrections (Unified Code) (730 ILCS 5/5-6-3(a)(8.6) (West 2012)) to prevent sex offenders from living in close proximity to each other. The purpose of this statute is to protect the public, to treat and rehabilitate sex offenders, and to prevent sex offenders from influencing or enabling each other to commit sexual offenses. Because section 5-6-3(a)(8.6) prohibits defendant from residing "at the same address, or in the same condominium unit or apartment unit or in the same condominium complex or apartment complex, or with another person [defendant] knows or reasonably should know is a convicted sex offender," the addition of mobile home parks to probation condition No. 4 is within the scope and intent of the statute.

¶ 31 For the reasons stated, we conclude that probation condition No. 4 was properly and reasonably imposed.

¶ 32                                    b. Probation Condition No. 5

¶ 33 Probation condition No. 5 requires that defendant

> "[n]ot access or use a social networking website as defined in Section 17-0.5 of the Criminal Code of 2012. (730 ILCS 5/5-6-3(a)(8.9))."

¶ 34    Under section 17-0.5, "Social networking website" is defined as follows:

"[A]n Internet website containing profile web pages of the members of the website that include the names or nicknames of such members, photographs placed on the profile web pages by such members, or any other personal or personally identifying information about such members and links to other profile web pages on social networking websites of friends or associates of such members that can be accessed by other members or visitors to the website. A social networking website provides members of or visitors to such website the ability to leave messages or comments on the profile web page that are visible to all or some visitors to the profile web page and may also include a form of electronic mail for members of the social networking website." 720 ILCS 5/17-0.5 (West 2012).

¶ 35    In *People v. Crabtree*, 2015 IL App (5th) 130155, ¶ 1, 37 N.E.3d 922, the defendant was convicted of aggravated criminal sexual abuse of a minor who was under 13 years old, and one of the defendant's probation conditions prohibited him from accessing or using a social networking website. On appeal, defendant argued that this condition was overly broad because he did not use a computer to commit that offense. *Id.* ¶ 12.

¶ 36    The Fifth District concluded that the trial court did not abuse its discretion by imposing this probation condition, explaining that "[a] condition of probation is permissible so long as there is some connection between the condition and the underlying offense." *Id.* ¶ 16. The Fifth District further wrote that "although defendant's crime did not include use of a computer or a social networking website, it involved the sexual abuse of a young girl. Thus, the conditions of probation appear reasonably related to the goals of deterrence, protection of the public, and rehabilitation of defendant." *Id.* ¶ 17. Additionally, "[g]iven the nature of the offense of which defendant was convicted, we do not believe these mandatory conditions are unreasonable." *Id.* ¶ 18.

¶ 37    We agree with the Fifth District's analysis and deem it pertinent to this case. Although defendant's criminal sexual abuse and aggravated criminal sexual abuse did not include use of a computer or a social networking website, his offenses involved the sexual abuse of a young girl. Probation condition No. 5 is permissible because there is a connection between the condition and his sexual assault offenses—specifically, defendant could otherwise access social networking sites often used by minors.

¶ 38    We further view probation condition No. 5 as imposed for "the protection of the public" (*People v. Goossens*, 2015 IL 118347, ¶ 11, 39 N.E.3d 956), because it is reasonably related to (1) deterring defendant from sexually assaulting another minor and (2) protecting the public by preventing him from (a) contacting anyone under the age of 18 and (b) accessing social networking sites often used by minors.

¶ 39    For the reasons stated, we conclude that probation condition No. 5 was reasonably and properly imposed.

¶ 40                    c. Probation Condition Nos. 6 and 8

¶ 41    Probation condition No. 6 requires that defendant

"[n]ot knowingly use any computer scrub software on any computer that the defendant uses. (730 ILCS 5/5-6-3(a)(11))."

¶ 42    Probation condition No. 8 requires that defendant

"[n]ot access or use a computer or any other device with Internet capability without the prior written approval of the probation officer; submit to periodic unannounced examinations of defendant's computer or any other device with Internet capability by the probation officer, a law enforcement officer, or assigned computer or information technology specialist, including the retrieval and copying of all data from the computer or device and any internal or external peripherals and removal of such information, equipment, or device to conduct a more thorough inspection; submit to the installation on the offender's computer or device with Internet capability, at the offender's expense, of one or more hardware or software systems to monitor the Internet use; and submit to any other appropriate restrictions concerning the defendant's use of or access to a computer or any other device with Internet capability imposed by the probation officer. (730 ILCS 5/5-6-3(a)(8.8) and (b)(18))."

¶ 43        Defendant points out that his offenses did not involve any use of computers or the Internet and argues therefore that bans on various aspects of computer usage are not reasonable. Defendant additionally contends that probation condition Nos. 6 and 8 (1) unreasonably bar him from "engaging with a wide swath of protected speech" and (2) do not bear a reasonable relationship to protecting the public and punishing and rehabilitating him.

¶ 44        Defendant also argues that sections 5-6-3(a)(8.8) and 5-6-3(b)(18) of the Unified Code (730 ILCS 5/5-6-3(a)(8.8), (b)(18) (West 2016)), which grant a probationer Internet use with the prior written approval of the probation officer, give the probation officer blanket authority to deny or allow Internet use, "without providing any standards whatsoever on how to decide what internet use is permissible." As a result, defendant contends that a probation officer's unconstrained authority to deny him all Internet access without any statutory guidance as to how the probation officer should exercise that authority is unreasonable and unconstitutional.

¶ 45        We disagree with defendant. The Illinois legislature enacted sections 5-6-3(a)(8.8) and 5-6-3(b)(18) (*id.*) to limit a sex offender's access to a computer, the Internet, and computer scrub software for the protection of the public. *Goossens*, 2015 IL 118347, ¶ 11. Probation condition Nos. 6 and 8 protect the public, in particular minors, by (1) limiting defendant's computer and Internet access so that he cannot attempt to contact a minor, (2) preventing him from using computer scrub software to hide any of his attempts to contact a minor, and (3) preventing him from attempting to sexually abuse a minor.

¶ 46        "[W]hen deciding the propriety of a condition of probation imposed in a particular case, whether explicitly statutory or not, the overriding concern is reasonableness." *J.W.*, 204 Ill. 2d at 78. Although defendant's criminal sexual offenses did not involve use of a computer, the Internet, or computer scrub software, his offenses involved the sexual abuse of a minor. Probation condition Nos. 6 and 8 are reasonable and permissible because a connection exists between those conditions and his sexual assault offenses, given that the question is whether defendant should have access to the Internet and social networking sites that minors often use.

¶ 47        Probation condition No. 6 places no restriction on defendant's ability to engage in protected speech. The purpose of probation condition No. 6 is to prevent defendant from using computer scrub software to "delete information from the computer unit, the hard drive, or other software, which would eliminate and prevent discovery of browser activity" and "which would over-write files in a way so as to make previous computer activity, including but not limited to website access, more difficult to discover." 730 ILCS 5/3-1-2(c-5) (West 2010).

¶ 48    Probation condition No. 8 does not unreasonably restrict defendant's ability to communicate or engage in protected speech. Under probation condition No. 8, defendant may still access or use a computer or any other device with Internet capability as long as he first obtains the prior written approval of the probation officer.

¶ 49    We strongly disagree with defendant's contention that a probation officer's unconstrained and guidance-less authority to deny or allow defendant Internet use is somehow improper. One of the duties of a probation officer is

> "[t]o take charge of and watch over all persons placed on probation under such regulations and for such terms as may be prescribed by the court, and giving to each probationer full instructions as to the terms of his release upon probation and requiring from him such periodical reports as shall keep the officer informed as to his conduct." 730 ILCS 110/12(5) (West 2016).

Probation officers are the eyes and ears of the court, and to make probation a meaningful sentence, they must have—and must exercise—vast discretion in their dealings with probationers. Determining whether a probationer may have Internet access (and, if so, under what circumstances and restrictions) is but merely one of the many judgments the courts expect their probation officers to make when supervising the life and behavior of probationers.

¶ 50    For the reasons stated, we conclude that probation condition Nos. 6 and 8 were reasonably and properly imposed.

¶ 51                        d. Probation Condition No. 11

¶ 52    Probation condition No. 11 requires that defendant

> "[n]ot have contact with, or attempt to have contact with, any person under the age of 18, regardless of familial relationship, either in person, by third party, by phone, by mail, in writing or electronically, or by internet communication in any form, unless approved by the probation officer and treatment provider."

¶ 53    Defendant argues that this probation condition is unreasonable and overly broad, contending that (1) it is not related to his offenses (which occurred at home and did not involve any communication), (2) it is not related to his rehabilitation, and (3) it exposes him to strict liability for nonintentional communications. We disagree.

¶ 54    The Illinois Supreme Court has consistently held that "any additional condition [of probation] not expressly authorized by statute 'may be imposed as long as it is (1) reasonable and (2) relates to (a) the nature of the offense or (b) the rehabilitation of the defendant as determined by the trial court.' " *Goossens*, 2015 IL 118347, ¶ 13 (quoting *Meyer*, 176 Ill. 2d at 378). Because defendant's offenses involved the sexual abuse of his younger sister, who was a minor, probation condition No. 11 is reasonable to prohibit defendant from having contact with a minor, unless first approved by the probation officer and treatment provider. The value to the public in imposing probation condition No. 11 is to prevent defendant from committing sexual abuse against a minor and to protect minors, which is achieved by prohibiting defendant from having contact or attempting to have contact with minors.

¶ 55    In *People v. Cozad*, 158 Ill. App. 3d 664, 670, 511 N.E.2d 211, 216 (1987), this court wrote that one of the primary purposes of probation is "to protect the public from the type of conduct that led to the placement of the defendant on probation." In *Meyer*, the supreme court cited our opinion in *Cozad* approvingly and wrote the following: "Protection of the public from the type

of conduct that led to a defendant's conviction is one of the goals of probation." *Meyer*, 176 Ill. 2d at 379. Protection of the public, in particular minors, by preventing defendant from having contact with minors is one of the goals of defendant's probation and is reasonable.

¶ 56   Further, we view probation condition No. 11 as relating to the nature of defendant's offenses, which involved the sexual abuse of his younger sister, who was a minor. Thus, it is appropriate to prohibit defendant from having contact with a minor unless approved by a probation officer and treatment provider. Probation condition 11 also relates to defendant's rehabilitation, in that his compliance with it will make difficult his committing further sexual abuses against a minor.

¶ 57   For the reasons stated, we conclude that probation condition No. 11 was reasonable and properly imposed.

¶ 58                              e. Probation Condition No. 14

¶ 59   Probation condition No. 14 requires that defendant

> "[n]ot purchase, view, or possess any pornographic material including but not limited to magazines, videos, DVD's, photographs, digital media, or any other material depicting or describing persons in a state of undress or engaging in sexual activities; not access any such material through the Internet; not solicit a prostitute or access any telephone numbers providing sexually stimulating services; and not enter any adult bookstores, strip clubs, gentlemen's clubs, or any other establishment which provides sexually stimulating services or sells sexual materials."

¶ 60   Defendant argues that probation condition No. 14 is unreasonable and overly broad because it is plainly unconstitutional under the first amendment and bans him from "engaging with many of the creations of popular-culture entertainment and works of art that humanity has ever produced." Defendant also contends that probation condition No. 14 bans him from watching many television shows and movies, reading many novels, or attending art museums, among other things. We disagree.

¶ 61   We deem probation condition No. 14 to be a reasonable restriction to punish and rehabilitate defendant due to his criminal sexual abuse and aggravated criminal sexual abuse convictions. Defendant may still purchase, view, or possess any creations of popular-culture entertainment and works of art as long as they are not pornographic and do not depict or describe persons in a state of undress or engaging in sexual activities.

¶ 62   We reject defendant's claim that the phrase "state of undress" in probation condition 14 includes "a person wearing a swim suit, or pajamas, or just underwear, or no shoes." That claim is a gross misreading and misinterpretation of probation condition No. 14, which prohibits defendant from viewing any pornographic material "depicting or describing persons in a state of undress or engaging in sexual activities."

¶ 63   "When assessing the reasonableness of a condition of probation it is appropriate to consider whether the restriction is related to the nature of the offense or the rehabilitation of the probationer." *J.W.*, 204 Ill. 2d at 79. Because the nature of defendant's sexual assault offenses is sexual, restricting defendant's access to pornographic material, which is sexually stimulating, is reasonable. Probation condition No. 14 serves the purpose of probation, which is to benefit society by restoring defendant "to useful citizenship, rather than allowing a defendant to become a burden as an habitual offender." *Meyer*, 176 Ill. 2d at 379.

¶ 64    For the reasons stated, we conclude that probation condition No. 14 was reasonably and properly imposed.

¶ 65                              2. *Defendant's Claim That the Probation Conditions*
                                  *Imposed Upon Him Were Unconstitutional*

¶ 66    As we noted earlier, this court should consider defendant's claim that probation conditions violated his constitutional rights only if we first conclude that the trial court did not abuse its discretion by imposing the probation conditions at issue. *Dustyn W.*, 2017 IL App (4th) 170103, ¶ 24. Because we have now so concluded, we will now address whether any of those conditions violated defendant's constitutional rights.

¶ 67                              a. Defendant's Constitutional Arguments

¶ 68    Defendant contends that although a trial court is generally given wide discretion in determining the conditions of probation (*People v. Harris*, 238 Ill. App. 3d 575, 579, 606 N.E.2d 392, 395 (1992)), probationers still possess basic constitutional rights, with the result that a court's discretion is limited by constitutional safeguards and must be exercised in a reasonable manner. *J.W.*, 204 Ill. 2d at 77. Defendant further cites *United States v. Lara*, 815 F.3d 605, 609 (9th Cir. 2016), for the proposition that "there is a limit on the price the government may exact in return for granting probation."

¶ 69    Defendant places major reliance upon the recent decision of the United States Supreme Court in *Packingham v. North Carolina*, 582 U.S. ___, 137 S. Ct. 1730 (2017), in which the defendant, who was a registered sex offender, was convicted of accessing a commercial social networking website. The defendant in that case had pleaded guilty to taking indecent liberties with a child because, when he was 21 years old, he had sex with a 13-year-old girl. He was required to register as a sex offender—"a status that can endure for 30 years or more." *Id.* at ___, 137 S. Ct. at 1734. As a registered sex offender, defendant was barred from gaining access to commercial social networking websites. Nonetheless, after a traffic ticket against him was dismissed, he logged onto Facebook and posted a statement pertaining to that dismissal on his personal profile. *Id.* at ___, 137 S. Ct. at 1734.

¶ 70    The defendant appealed his conviction for accessing a commercial social website, and the Supreme Court reversed, concluding that the statute in question "enacts a prohibition unprecedented in the scope of [f]irst [a]mendment speech it burdens." *Id.* at ___, 137 S. Ct. at 1737. The Supreme Court concluded as follows:

        "In sum, to foreclose access to social media *altogether* is to prevent the user from engaging in the legitimate exercise of [f]irst [a]mendment rights. It is unsettling to suggest that only a limited set of websites can be used *even by persons who have completed their sentences*. Even convicted criminals—and in some instances especially convicted criminals—might receive legitimate benefits from these means for access to the world of ideas, in particular if they seek to reform and to pursue lawful and rewarding lives." (Emphases added.) *Id.* at ___, 137 S. Ct. at 1737.

¶ 71    Justice Alito, with whom Chief Justice Roberts and Justice Thomas joined, wrote a special concurrence in which he noted that the statute at issue

        "has a staggering reach. It makes it a felony for a registered sex offender simply to visit a vast array of websites, including many that appear to provide no realistic opportunity

for communications that could facilitate the abuse of children. Because of the law's extraordinary breadth, I agree with the Court that it violates the Free Speech Clause of the First Amendment." *Id.* at ___, 137 S. Ct. at 1738 (Alito, J., specially concurring, joined by Roberts, C.J., and Thomas, J.).

¶ 72   Defendant appropriately concedes that the difference between his case and *Packingham* is that he is a probationer, while *Packingham* dealt with a person who had the status of a registered sex offender. However, defendant argues that this is a distinction without a difference, and that this court should hold some of the probation conditions imposed upon defendant unconstitutional under the first amendment. Defendant acknowledges that he has not yet completed his sentence of probation and that probationers "retain somewhat diminished constitutional rights," in that "a court granting probation may impose reasonable conditions that deprive the offender of some freedoms enjoyed by law-abiding citizens." *United States v. Knights*, 534 U.S. 112, 119 (2001).

¶ 73   Defendant also concedes that the Fifth District in *Crabtree* has held that probation conditions limiting a probationer's use of the Internet was not improper, writing that "[d]efendant fails to identify and we fail to find any protected constitutional right of a person to use a computer, the Internet, or a social networking website." *Crabtree*, 2015 IL App (5th) 130155, ¶ 17. However, defendant asserts that this "position is untenable following *Packingham*," and this court should now reach a result different than that reached by the Fifth District in *Crabtree*.

¶ 74   In support of this argument, defendant cites decisions of federal courts of appeal that deemed restrictions imposed upon convicted defendants that barred them from Internet usage improper, and defendant contends these decisions should guide this court's analysis in the present case. For instance, in *United States v. Goodwin*, 717 F.3d 511, 513-14 (7th Cir. 2013), the court found it was improper to require the defendant, who was convicted of failing to register as a sex offender and received a life term of supervised release, to install software and to permit his computer to be examined because the computer played no role either in the original offense or in the defendant's failure to register as a sex offender. In *United States v. Riley*, 576 F.3d 1046, 1048-49 (9th Cir. 2009), the court found that a special condition of the defendant's supervised release (he had been convicted of possessing child pornography) that he not use a computer to access any information relating to minors was overly broad and imposed a far greater deprivation of liberty than reasonably necessary to achieve legitimate goals of supervised release. Similarly, in *United States v. Perazza-Mercado*, 553 F.3d 65 (1st Cir. 2009), the defendant pleaded guilty to a sex offense involving a young girl in his care and challenged a special condition of his supervised release that banned him from accessing the Internet in his home. The appellate court concluded that the ban would not protect the public or deter crime because he had never used the Internet improperly and it would hinder his chance at rehabilitation.

¶ 75   Although defendant cites these three federal court of appeal cases in support of his claim that the probation conditions in question are unconstitutional because they were so overly broad they denied him due process, we note that none of the decisions in those cases was based on a finding that the conditions the federal trial courts imposed were unconstitutional. Instead, the appellate courts concluded that the conditions in question were not reasonably imposed. See *Goodwin*, 717 F.3d at 524; *Riley*, 576 F.3d 1049; *Perazza-Mercado*, 553 F.3d at 78.

¶ 76            b. The State's Response to Defendant's Constitutional Claims

¶ 77    In response to defendant's constitutional claims, the State points out that the Supreme Court in *Packingham* struck down a North Carolina statute that banned registered sex offenders from accessing commercial social networking websites, but that is completely silent regarding whether its holding applies to probationers. The State asserts this is significant because "a court granting probation may impose reasonable conditions that deprive the offender of some freedoms enjoyed by law-abiding citizens." *Knights*, 534 U.S. at 119. Further, "[I]t is always true of probationers *** that they do not enjoy 'the absolute liberty to which every citizen is entitled, but only *** conditional liberty properly dependent on observance of special [probation] restrictions.' " *Griffin v. Wisconsin*, 483 U.S. 868, 874 (1987) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972)).

¶ 78    Based upon this authority, the State asserts the following: "Clearly, as a result of a probationers' conditional liberty—unlike individuals who have completed their sentence—*Packingham* is distinguishable from this case." The State further maintains that the conditional liberty that probationers are granted is exactly what allows probationers to be barred from those same websites. "Notably, unlike the convicted sex offenders in *Packingham*[,] who had served their sentences, here, defendant's probationary period was not yet completed and was only for a predetermined[,] definite period of time."

¶ 79    In support of its position, the State cites the Illinois Supreme Court's decision in *J.W.*, in which that court wrote that "[e]ven fundamental constitutional rights are not absolute and may be reasonably restricted in the public interest," further noting that "a condition of probation which impinges on fundamental constitutional rights is not automatically deemed invalid." *J.W.*, 204 Ill. 2d at 78.


¶ 80          c. This Court Concludes the Probation Conditions Are Constitutional

¶ 81    Without repeating the State's arguments, we agree that the probation conditions in question are constitutional for essentially the reasons the State provides. In so concluding, we note that this court in *In re Dustyn W.* recently addressed a challenge based on constitutional grounds to a probation condition brought by a juvenile who had been found delinquent and sentenced to probation. The respondent in that case argued on appeal that a geographical limitation the trial court imposed as a probationary condition was constitutionally overbroad, and this court rejected that challenge. *Dustyn W.*, 2017 IL App (4th) 170103, ¶ 29. We explained our conclusion, as follows:

> "The condition is narrowly drawn because it contains exemptions for legitimate access to the University campus and does not categorically ban respondent. The ban does not apply when either (1) respondent is in the presence of his parent, guardian, or custodian or (2) respondent has received advance permission from his probation officer. Those two exceptions distinguish the present case from *J.W.*, where the prohibition on the respondent's travel *** was absolute." *Id.*

¶ 82    Similarly, the probation conditions in this case also contain provisions whereby the defendant's probation officer temporarily could lift or modify a condition if the probation officer believed doing so would be appropriate, given both defendant's need to have that condition temporarily lifted or modified, as well as the need to protect the public, particularly children.

¶ 83    Thus, this case is different from *Packingham* in two important respects: (1) defendant's access to social media is not foreclosed *altogether*, as was the case in *Packingham*, and (2) defendant has not yet completed his sentence and his probation conditions cannot "endure for 30 years or more." *Packingham*, 582 U.S. at ___, 137 S. Ct. at 1734.

¶ 84                                    III. CONCLUSION

¶ 85    For the reasons stated, we affirm the trial court's judgment. The trial court's imposition of additional probation conditions on remand was proper and imposition of probation condition Nos. 4, 5, 6, 8, 11, and 14 was reasonable and proper.

¶ 86    Affirmed.